SEYFARTH SHAW LLP
Andrew M. McNaught (SBN 209093)
*amcnaught@seyfarth.com*
Michael A. Wahlander (SBN 260781)
*mwahlander@seyfarth.com*
Alison H. Hong (SBN 272968)
*ahong@seyfarth.com*
560 Mission Street, 31st Floor
San Francisco, California 94105
Telephone:    (415) 397-2823
Facsimile:     (415) 397-8549

Attorneys for Defendant
RANDSTAD US, L.P.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FREDDY J. ROBLEDO, on behalf of himself and all other similarly situated employees,<br><br>Plaintiff,<br><br>v.<br><br>RANDSTAD US, L.P.; and DOES 1 through 100, inclusive,<br><br>Defendants. | Case No. 5:17-cv-01003-BLF<br><br>**DEFENDANT RANDSTAD US, L.P.'S NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION, OR, IN THE ALTERNATIVE, STAY PROCEEDINGS; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATIONS OF JUDY LEAL, SAMY MIKKILINENI, AND ALISON H. HONG**<br><br>Date:     November 2, 2017<br>Time:    9:00 a.m.<br>Dept.:    Courtroom 3 - 5th Floor<br>Judge:   Hon. Beth Labson Freeman |

**TO PLAINTIFFS AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on November 2, 2017 at 9:00 a.m., or as soon thereafter as the matter can be heard, in Courtroom 3 of the above-entitled Court, located at San Jose Courthouse, 5th Floor, 280 South 1st Street, San Jose, California 95113, Defendant RANDSTAD US, L.P. ("Defendant" or "Randstad") will move, and herby does move, for an order compelling Plaintiffs Jose Martinez Lopez, Elisabeth Lopez, and Fernando Lara (collectively "Plaintiffs"), to submit their respective individual claims to arbitration, or, in the alternative, for a stay of the proceedings, including ruling on

1  this motion, pending resolution of *Ernst & Young, LLP v. Morris,* Supreme Court of the United States
2  Case No. 16-300 (filed September 8, 2016).

3  **THIS MOTION IS BROUGHT** pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. §§
4  2, 3 & 4, on the grounds that the First Amended Complaint ("FAC") alleges controversies arising out of
5  and relating to contracts and transactions involving and affecting interstate commerce, that Plaintiffs
6  agreed to resolve those controversies in arbitration through a written agreement, and that all issues raised
7  in the FAC by Plaintiffs against Randstad are "referable to arbitration."

8  Randstad's motion is based on this Notice of Motion and Memorandum of Points and
9  Authorities, the Declarations of Judy Leal, Samy Mikkilineni, and Alison H. Hong, the Request for
10 Judicial Notice, any oral argument that the Court may allow, and all pleadings and papers on file with
11 the Court in this action, any matter that is judicially noticeable, and on such other matters as may be
12 presented to the Court at or before the hearing of this motion.

14 DATED:   June 21, 2017                     Respectfully submitted,

15                                            SEYFARTH SHAW LLP

17                                            By:   */s/ Andrew M. McNaught*
18                                                  Andrew M. McNaught
                                                    Michael A. Wahlander
                                                    Alison H. Hong
19
20                                            Attorneys for Defendant
                                              RANDSTAD US, L.P.

# **TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ............................................................................................................... 1

II. FACTUAL BACKGROUND .............................................................................................. 2

    A. Defendant Randstad ................................................................................................ 2

    B. Plaintiffs Enter Into A Binding Arbitration Agreement With Randstad ............................. 2

    C. The Arbitration Agreements Between Plaintiffs and Randstad .......................................... 3

    D. Plaintiffs File This Lawsuit Alleging Claims Covered By The Arbitration Agreement .... 4

    E. Plaintiffs Refuse to Arbitrate ................................................................................... 4

III. LEGAL ARGUMENT .......................................................................................................... 4

    A. The FAA Strongly Favors Arbitration And Applies To This Case ................................... 4

    B. Valid Arbitration Agreements Governing Plaintiffs' Claims Exist .................................. 5

        1. The Parties Entered Into Valid Arbitration Agreements ........................................ 5

        2. The Agreements Cover The Claims In This Lawsuit ............................................ 6

    C. The Arbitration Agreements Are Not Unconscionable ....................................................... 6

        1. The Arbitration Agreements Are Not Procedurally Unconscionable .................... 7

        2. The Agreements Are Not Substantively Unconscionable Under *Armendariz* ........ 8

            a. The Arbitration Agreements Provide for a Neutral Arbitrator .................. 8

            b. The Arbitration Agreements Provide For Adequate Discovery ................ 8

            c. The Arbitration Agreements Require A Written Award ............................ 9

            d. The Arbitration Agreements Provide Adequate Remedies ........................ 9

            e. The Arbitration Agreements Do Not Impose Unreasonable Costs ............. 9

    D. Plaintiffs Must Arbitrate Their Claims On An Individual Basis ....................................... 9

    E. The NLRA Does Not Invalidate Class Action Waivers ................................................... 10

    F. The Court Should Stay Or Dismiss This Action In Its Entirety ....................................... 11

    G. If This Court Believes The Supreme Court's Decision In *Morris* Would Affect The Outcome Of This Motion, The Proceedings Should Be Stayed Pending Review ............ 11

IV. CONCLUSION .................................................................................................................. 13

**TABLE OF AUTHORITIES**

**Page(s)**

**Federal Cases**

*Ambler v. BT Americas Inc.*,
964 F. Supp. 2d 1169 (N.D. Cal. 2013) ................................................................................5

*AT&T Mobile LLC v. Concepcion*,
131 S. Ct. 1740 (2010) ................................................................................................ *passim*

*AT&T Technologies., Inc. v. Communications Workers of America*,
475 U.S. 643 (1986) ..............................................................................................................6

*Beard v. Santander Consumer USA, Inc.*,
2012 U.S. Dist. LEXIS 53882 (E.D. Cal. 2012) ...................................................................8

*Burnett v. Macy's West Stores Inc.*,
No. 1:11-cv-01277 LJO SMS, 2011 WL 4770614 (E.D. Cal. Oct. 7, 2011) .........................8

*Certiorari*, *Ernst & Young LLP v. Morris*,
Supreme Court of the United States Case No. 16-300 (filed September 8, 2016) .........2, 12

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*,
207 F.3d 1126 (9th Cir. 2000) ..............................................................................................5

*Circuit City Stores, Inc. v. Adams*,
532 U.S. 105 (2001) ..............................................................................................................5

*Clinton v. Jones*,
520 U.S. 681 (1997) ............................................................................................................11

*CompuCredit Corp. v. Greenwood*,
132 S. Ct. 665 (2012) ..........................................................................................................10

*Cox v. Ocean View Hotel Corp.*,
533 F.3d 1114 (9th Cir. 2008) ..............................................................................................5

*Davis v. Nordstrom, Inc.*,
755 F.3d 1089 (9th Cir. 2014) ..............................................................................................5

*Filtrol Corp. v. Kelleher*,
467 F.2d 242 (9th Cir. 1972) ..............................................................................................12

*First Options of Chicago, Inc. v. Kaplan*,
514 U.S. 938 (1995) ..............................................................................................................6

*Gilmer v. Interstate/Johnson Lane Corp.*,
500 U.S. 20 (1991) ................................................................................................................5

<010>
<010>
<010>

*Green Tree Fin. Corp. v. Randolph*,
    531 U.S. 79 (2000) ........................................................................................................... 10

*Holloway v. Best Buy Co., Inc.*,
    No. C 05-5056 PJH, 2010 WL 816630 (N.D. Cal. 2010) (staying a certification ruling
    pending the Ninth Circuit's *en banc* ruling in *Wal-Mart v. Dukes*, 564 U.S. 388
    (2010).) ........................................................................................................................... 12

*Ingle v. Circuit City Stores, Inc.*,
    328 F. 3d 1165 (9th Cir. 2003) ........................................................................................ 5

*Kilgore v. KeyBank Nat'l Ass'n.*,
    718 F.3d 1052 (9th Cir. 2013) (*en banc*) ....................................................................... 7

*Kingdom of Sweden v. Melius*,
    2015 WL 7574463 (C.D. Cal. Nov. 25, 2015) ............................................................. 12

*Landis v. North American Co.*,
    299 U.S. 248 (1936) ....................................................................................................... 11

*Leyva v. Certified Grocers of Cal., Ltd.*,
    593 F.2d 857 (9th Cir. 1979) ........................................................................................ 12

*Lindell v. Synthes, USA*,
    2012 WL 1657197 (E.D. Cal. May 10, 2012) ............................................................. 12

*Meijer, Inc. v. Abbott Labs.*,
    2009 WL 723882 (N.D. Cal. Mar. 18, 2009) .............................................................. 12

*Morris v. Ernst & Young, LLP*,
    834 F.3d 975 (9th Cir. 2016), *certiorari granted*, 137 S. Ct. 809 (2017) .............. passim

*NGV Gaming, Ltd. v. Harrah's Operating Co.*,
    2008 WL 4951587 (N.D. Cal. Nov. 18, 2008) ............................................................ 12

*Oguejiofor v. Nissan*,
    No. C-11-0544 EMC, 2011 WL 3879482 (N.D. Cal. Sept. 2, 2011) ............................ 8

*Patterson v. Raymours Furniture Co., Inc.*,
    659 F. App'x 40 (2d Cir. 2016) ..................................................................................... 10

*Perry v. Thomas*,
    482 U.S. 483 (1987) ......................................................................................................... 4

*Ruhe v. Masimo Corp.*,
    No. SACV 11-00734-CJC(JCGx), 2011 WL 4442790 (C.D. Cal. Sept. 16, 2011) ...... 8

*Sparling v. Hoffman Constr. Co.*,
    864 F.2d 635 (9th Cir. 1988) ........................................................................................ 11

iii

**State Cases**

*Armendariz v. Found. Health Psychcare Servs., Inc.*,
   24 Cal.4th 83 (2000) ................................................................................................7, 8, 9

*Century Bank v. St. Paul Fire & Marine Ins. Co.*,
   4 Cal.3d 319 (1971) ............................................................................................................5

*Jersey v. John Muir Med. Ctr.*,
   97 Cal.App.4th 814 (2002) .................................................................................................7

*Kinney v. United Healthcare Servs., Inc.*,
   70 Cal.App.4th 1322 (1999) ...............................................................................................7

*Legatree v. Luce, Forward, Hamilton & Scripps LLP*,
   74 Cal.App.4th 1105 (1999) ...............................................................................................7

*McMannus v. CIBC World Mkts. Corp.*
   (2003) 109 Cal.App.4th 76 (2003).................................................................................7, 8

*Pinnacle Museum Tower Ass'n v. Pinnacle Mkt. Dev. (US), LLC*,
   55 Cal. 4th 223 (2012) ........................................................................................................5

*Roman v. Superior Court*,
   172 Cal.App.4th 1462 (2009) .............................................................................................8

*Vianna v. Doctors' Mgmt. Co.*,
   27 Cal.App.4th 1186 (1994) ...............................................................................................6

**Federal Statutes**

9 U.S.C. § 1, *et seq.*..................................................................................................................5

9 U.S.C. § 2..................................................................................................................1, 4, 5, 7

9 U.S.C. § 3....................................................................................................................................11

29 U.S.C. § 158(a) ........................................................................................................................11

FAA...................................................................................................................................*passim*

Federal Arbitration Act .......................................................................................................1, 3, 4

National Labor Relations Act, 29 U.S.C.A. § 157...............................................................1, 11

NLRA...................................................................................................................................1, 10, 11

NLRA § 7........................................................................................................................................11

NLRA §§ 7 and 8....................................................................................................................10, 11

**State Statutes**

Civ. Code § 1633.7 ................................................................................................................6

Civ. Code § 1633.9(a) .............................................................................................................6

**Other Authorities**

*Ernst & Young, LLP v. Morris*,
    Supreme Court Case No. 16-300 (filed September 8, 2016) ...............................................13

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Despite signing agreements to arbitrate all disputes related to their employment with their former employer Defendant Randstad US, L.P. ("Randstad"), Plaintiffs Jose Martinez Lopez, Elisabeth Lopez, and Fernando Lara filed a class action lawsuit against Randstad alleging five separate claims for violations of the California Labor Code and unfair competition under the California Business and Professions Code. Plaintiffs cannot maintain this lawsuit because their respective arbitration agreements govern these claims, mandate arbitration, and are not unconscionable in any way.

Under the agreements, not only must Plaintiffs submit all claims arising from their employment with Randstad to arbitration, but they also cannot maintain any class action. Plaintiffs must instead separately submit only their respective individual claims to arbitration. Because the arbitration agreements require Plaintiffs to arbitrate, Randstad requested Plaintiffs to submit their claims to arbitration. Plaintiffs refused, claiming that the arbitration agreements are not enforceable—despite the unequivocal language in the agreements mandating individual arbitration.

The Federal Arbitration Act ("FAA") mandates that all arbitration agreements "shall be valid, irrevocable, and enforceable, save upon grounds as exist at law or in equity for the revocation of any contract," 9 U.S.C. § 2, and case law confirms that the FAA reflects a strong federal policy favoring the enforceability of arbitration agreements. Plaintiffs' arbitration agreements are no exception, and they are valid and enforceable both with respect to all of Plaintiffs' class claims against Randstad. Recently, the Ninth Circuit found that class action waivers violate the National Labor Relations Act, 29 U.S.C.A. § 157, ("NLRA"), in *Morris v. Ernst & Young, LLP*, 834 F.3d 975 (9th Cir. 2016), *certiorari granted*, 137 S. Ct. 809 (2017). Plaintiffs will no doubt rely on *Morris* in opposing Randstad's motion. But *Morris* was wrongly decided. Instead of considering whether the NLRA contains an express contrary congressional command that overrides the FAA, the *Morris* majority attempted to equate a substantive right to concerted action under the NLRA with a legal procedural mechanism for resolving disputes. *Morris,* 834 F.3d at 992 (Ikuta, J., dissenting).

Contrary to the *Morris* decision, the majority of circuits considering the issue have found that mandatory class action waivers do not violate the NLRA and are enforceable. The United States

Supreme Court has granted *certiorari* to review the circuit split and is likely to overturn *Morris*, because the *Morris* majority ignored Supreme Court precedent. *See Morris*, 834 F.3d at 990-998 (Ikuta, J., dissenting). Since *Morris* is wrongly decided and should not control, no reason exists to invalidate the arbitration agreements. Therefore, the Court should grant Randstad's motion to compel arbitration, or in the alternative, stay all proceedings, including ruling on the motion, pending the Supreme Court's review of the *Morris* decision.[1]

## II.  FACTUAL BACKGROUND

### A.  Defendant Randstad

Randstad provides a comprehensive range of human resources services throughout the United States, including in California. Declaration of Judy Leal ("Leal Dec.") at ¶ 2. In particular, Randstad offers staffing services to its clients throughout the country, such as temporary, temporary to hire, and direct placement services. *Id.* Randstad's corporate headquarters is located in Atlanta, Georgia. *Id.*

### B.  Plaintiffs Enter Into A Binding Arbitration Agreement With Randstad

Plaintiff Jose Martinez Lopez periodically worked on assignment for one of Randstad's clients in 2015 and 2016. Leal Dec. at ¶ 5. On July 20, 2015, Mr. Lopez executed a binding arbitration agreement. *Id.* at ¶ 5, Ex. A.

Plaintiff Elisabeth Lopez periodically worked on assignment for one of Randstad's clients in 2013. Leal Dec. at ¶ 6. On May 29, 2013, Ms. Lopez executed a binding arbitration agreement. *Id.* at ¶ 6, Ex. B. In May 2016, Ms. Lopez called the Salinas branch office stating she was available for work and was advised that she needed to come in to the office to fill out new application paperwork, but she did not do so. *Id.* at ¶ 6. In August 2016, Ms. Lopez contacted the Salinas branch office again checking to see if there was work available. *Id.* Ms. Lopez was again advised that she would have to fill out new application paperwork. *Id.* Ms. Lopez was asked to fill out new application paperwork, which includes an arbitration agreement, as a matter of routine because she had been inactive in Randstad's system for more than six months and was seeking additional assignments. *Id.* On August 9, 2016, Ms. Lopez electronically signed a second arbitration agreement, among other on-boarding documents. Declaration

---

[1] *See*, Request for Judicial Notice ("RJN") Ex. A, Question Presented, *Ernst & Young LLP v. Morris*, Supreme Court of the United States Case No. 16-300, Cert. Granted Jan. 13, 2017.

of Samy Mikkilineni ("Mikkilineni Dec.") at ¶ 2-7, Ex. A; Leal Dec. at ¶ 6, Ex. B.

Plaintiff Fernando Lara periodically worked on assignment for one of Randstad's clients in 2013, 2014, and 2015. Leal Dec. at ¶ 7. On December 11, 2013, Mr. Lara executed a binding arbitration agreement. *Id.* at ¶ 7, Ex. D. Mr. Lara's arbitration agreement is a Spanish-translated version of the arbitration agreements signed by Mr. Lopez on July 20, 2015 and Ms. Lopez on May 29, 2013. *Id.* at ¶¶ 7 Ex. D; Declaration of Emily Tell ("Tell Dec.") at ¶¶3-4, Exs. B & C.

### C. The Arbitration Agreements Between Plaintiffs and Randstad

Under each of the arbitration agreements executed by Plaintiffs, Plaintiffs agreed that they would submit any "covered claims" to binding arbitration. Leal Dec. at ¶¶ 5-7, Exs. A-D; Tell Dec. at ¶¶3-4, Exs. B & C.[2] The agreements define "covered claims" as any legal claims that "*relate to my recruitment, hire, employment . . .* including, but not limited to, those *concerning wages or compensation . . .*" *Id* [emphasis added]. Plaintiffs further agreed that all "covered claims will only be arbitrated on an individual basis, and that *both Randstad and I waive the right to participate in or receive money from any class, collective or representative proceeding*." *Id* [emphasis added].

Along those same lines, Plaintiffs agreed:

> *I may not bring a [claim or covered claim] on behalf of other individuals*, and *any arbitrator hearing my claim may not* combine more than one individual's claim or claims into a single case, or *arbitrate any form of a class, collective, or representative proceeding*.

*Id.* [emphasis added]. Further, each of the arbitration agreements specifically state they are governed by the Federal Arbitration Act ("FAA") and that "this agreement may be enforced and administered by a court of competent jurisdiction through the filing of a petition to compel arbitration." *Id.*

As to the conduct of the arbitration, the arbitration agreement incorporates the Employment Arbitration Rules of the American Arbitration Association ("AAA Rules") and generally apply them. *Id.*; RJN Ex. B. Both Randstad and Plaintiffs have the opportunity to select a neutral arbitrator from a list of proposed arbitrators. *Id.* The agreements also allow the parties the opportunity to conduct discovery sufficient to present a meaningful prosecution or defense of the claims. Leal Dec. at ¶¶ 5-7,

---

[2] Randstad had the Spanish version of Mr. Lara's arbitration agreement translated by a certified translator. Tell Dec. at ¶¶2-4, Exs. A-C. The translation is attached to the Declaration of Emily Tell.

3

Exs. A-D; Tell Dec. at ¶¶3-4, Exs. B & C. The AAA Rules give the arbitrator wide discretion to regulate discovery necessary to a full and fair exploration of the issues in dispute. *Id.*; RJN Ex. B at p. 19. The agreements additionally provide for a written award. Leal Dec. at ¶¶ 5-7, Exs. A-D; Tell Dec. at ¶¶3-4, Exs. B & C. The agreements also do not limit available remedies. *Id.* Moreover, Randstad pays for all arbitration fees and any other costs uniquely attributable to arbitration. *Id.*

### D. Plaintiffs File This Lawsuit Alleging Claims Covered By The Arbitration Agreement

On January 24, 2017, Plaintiffs filed and served a First Amended Class Action Complaint for Damages and for Injunctive Relief ("FAC") against Randstad. FAC at p. 1. Subsequently, Randstad removed to this Court. Dkt. No. 1. Plaintiffs allege that Randstad violated various provisions of the California Labor Code and the Business and Professions Code when it purportedly: (1) failed to pay reporting time pay; (2) failed and refused to pay agreed wages; (3) failed to pay wages timely; (4) failed to pay all wages upon termination; and (5) engaged in unfair business practices. FAC at ¶¶ 40-76.

### E. Plaintiffs Refuse to Arbitrate

On March 7, 2017, Randstad asked Plaintiffs to submit their respective claims to individual arbitration and included relevant arbitration agreements or signature pages in that correspondence. Declaration of Alison H. Hong ("Hong Dec.") at ¶ 3, Ex. A. Plaintiffs refused to submit their claims to arbitration, instead asserting that the arbitration agreements are not enforceable. *Id.* at ¶ 4, Ex. B.

## III. LEGAL ARGUMENT

### A. The FAA Strongly Favors Arbitration And Applies To This Case

The Federal Arbitration Act ("FAA") "was enacted…in response to widespread judicial hostility to arbitration agreements." *AT&T Mobile LLC v. Concepcion*, 131 S. Ct. 1740, 1745 (2010) (citations omitted). The "principal purpose" of the FAA is to "ensur[e] that private arbitration agreements are enforced according to their terms." *Id.* at 1748 (internal quotes and citations omitted). The Supreme Court has described Section 2 "as reflecting both a liberal federal policy favoring arbitration and the fundamental principle that arbitration is a matter of contract." *Id.* at 1945. Because arbitration is a highly favored means of settling disputes, the United States Supreme Court has held that arbitration agreements "must be rigorously enforced." *Perry v. Thomas,* 482 U.S. 483, 490 (1987). In *Concepcion*, the Supreme Court vigorously emphasized that the FAA embodies "a liberal federal policy favoring

arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary." *Concepcion*, 131 S. Ct. at 1749.

The FAA governs the enforceability of written arbitration provisions in contracts involving interstate commerce. *See* 9 U.S.C. § 1, *et seq.*; *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24-26 (1991). Such contracts include employment contracts. *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 113-14 (2001). Randstad offers a comprehensive range of human resources services, such as temporary, temporary to hire, and direct placement staffing services to clients throughout the United States. Leal Dec. at ¶ 2. Accordingly, Plaintiffs' agreements to arbitrate involve interstate commerce and the FAA governs the agreements. 9 U.S.C. § 2. Further, Plaintiffs agreed in their respective arbitration agreements that the FAA would govern the agreements. Leal Dec. at ¶¶ 5-7, Exs. A-D. Under these circumstances, the FAA mandates Plaintiffs to submit their claims to arbitration.

### B. Valid Arbitration Agreements Governing Plaintiffs' Claims Exist

Compelling arbitration merely requires that the moving party show that a valid agreement to arbitrate exists and that the dispute is covered by the agreement. *See Davis v. Nordstrom, Inc.*, 755 F.3d 1089, 1092 (9th Cir. 2014); *Cox v. Ocean View Hotel Corp.*, 533 F.3d 1114, 1119 (9th Cir. 2008) (internal citation omitted); *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). Because both requirements are met here, the court should compel Plaintiffs to arbitrate their respective individual claims against Randstad and dismiss the action, or, in the alternative, stay the action pending the outcome of such individual arbitrations.

#### 1. The Parties Entered Into Valid Arbitration Agreements

To determine whether an arbitration agreement is valid and encompasses the dispute in issue, courts must apply ordinary state law principles. *Ingle v. Circuit City Stores, Inc.*, 328 F. 3d 1165, 1170 (9th Cir. 2003); *Ambler v. BT Americas Inc.*, 964 F. Supp. 2d 1169, 1173 (N.D. Cal. 2013). Under California law, a contract is valid if there is an offer, acceptance, and consideration. *Pinnacle Museum Tower Ass'n v. Pinnacle Mkt. Dev. (US), LLC*, 55 Cal. 4th 223, 236 (2012). "A party's acceptance of an agreement to arbitrate [is] express…where a party signs the agreement." *Id.*; *see also Century Bank v. St. Paul Fire & Marine Ins. Co.*, 4 Cal.3d 319, 327 (1971).

Each of the Plaintiffs here agreed in writing to arbitrate. In so doing, Plaintiffs expressly agreed

to submit their respective employment-related claims—including wage-and-hour claims—to final and binding arbitration. Leal Dec. at ¶¶ 5-7, Exs. A-D; Tell Dec. at ¶¶3-4, Exs. B & C. In fact, Plaintiff Elisabeth Lopez twice agreed to arbitrate by signing two arbitration agreements.[3] Leal Dec. at ¶ 6, Exs. B-C. As a result, Plaintiffs cannot dispute that they entered into valid arbitration agreements.

### 2. The Agreements Cover The Claims In This Lawsuit

Whether the Parties have agreed to arbitrate a dispute is governed by the terms of the parties' agreements pursuant to ordinary contract principles, and those contract principles are governed by state law. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). Any doubt as to whether a particular dispute falls within the arbitration agreement must be resolved in favor of sending claims to arbitration. *See Vianna v. Doctors' Mgmt. Co.*, 27 Cal.App.4th 1186, 1189 (1994); *see also AT&T Technologies., Inc. v. Communications Workers of America*, 475 U.S. 643, 650 (1986) (court must defer to arbitration "unless it can be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute," and "doubts should be resolved in favor of coverage.").

Plaintiffs' claims unquestionably fall within their respective agreements to arbitrate. Indeed, the language of the Parties' arbitration agreements is unequivocal, calling for the arbitration of any legal claims that relate to Plaintiffs' recruitment, hire, employment, and/or termination including, but not limited to, those concerning wages or compensation. Leal Dec. at ¶¶ 5-7, Exs. A-D; Tell Dec. at ¶¶3-4, Exs. B & C. All of Plaintiffs' claims pertain to their respective employment with Randstad, including their claims for failure to pay reporting time pay, failure to pay agreed wages, failure to pay wages timely, and unfair business practices. *See* FAC. Accordingly, Plaintiffs' claims are all within the scope of the parties' agreements to arbitrate claims relating to their employment relationship with Randstad.

### C. The Arbitration Agreements Are Not Unconscionable

Although Plaintiffs may try to avoid their obligations to arbitrate by claiming their respective agreements to arbitrate are unenforceable, the agreements are sound. The FAA includes a savings

---

[3] Ms. Lopez's electronically signed second arbitration agreement from August 9, 2016 cannot be denied legal effect or enforceability solely because it is in electronic form. Civ. Code § 1633.7. "An electronic record or electronic signature is attributable to a person if it was the act of the person. The act of the person may be shown in any manner." Civ. Code § 1633.9(a). The evidence shows that the electronic signature is attributable to Ms. Lopez. Mikkilineni Dec. at ¶ 2-7, Ex. A; Leal Dec. at ¶ 6, Ex. C.

clause that allows arbitration agreements to be invalidated only "upon such grounds as exist at law or in equity for revocation of any contract." 9 U.S.C. § 2; *Kilgore v. KeyBank Nat'l Ass'n*, 718 F.3d 1052, 1058 (9th Cir. 2013) (*en banc*). The savings clause preserves generally applicable contract defenses such as unconscionability, so long as those doctrines are not "applied in a fashion that disfavors arbitration." *AT&T Mobility LLC v. Concepcion*, 131 S.Ct. 1740, 1748 (2011).

Proving that an agreement is unconscionable requires the party resisting enforcement to show that the agreement is both procedurally and substantively unconscionable. *McMannus v. CIBC World Mkts. Corp.*, (2003) 109 Cal.App.4th 76, 87 (2003). Importantly, under the FAA, courts may not invalidate arbitration agreements under state laws applicable only to arbitration contracts. *Concepcion*, 131 S.Ct. at 1747. Nor may they apply traditional contract defenses, such as unconscionability, in a broader or more stringent manner to invalidate arbitration agreements and destroy the FAA's purpose to ensure that private arbitration agreements are enforced according to their terms. *Id*. at 1748. When a state law prohibits outright the arbitration of a particular type of claim, the analysis is straightforward: The conflicting rule is displaced by the FAA. *Id*. at 1747.

As set forth below, Plaintiffs cannot establish procedural or substantive unconscionability.

### 1.   The Arbitration Agreements Are Not Procedurally Unconscionable

For an agreement to be procedurally unconscionable, there must be an element of "oppression" or "surprise." *Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal.4th 83, 96-97 (2000); *Kinney v. United Healthcare Servs., Inc.*, 70 Cal.App.4th 1322, 1329 (1999). Significantly, arbitration agreements are not invalid simply because they are imposed as a condition of employment. *See*, *Legatree v. Luce, Forward, Hamilton & Scripps LLP*, 74 Cal.App.4th 1105, 1122-23 (1999); *Jersey v. John Muir Med. Ctr.*, 97 Cal.App.4th 814, 824 (2002).

In responding to Randstad's arbitration request, Plaintiffs did not provide any reason why they believe the arbitration agreements are procedurally unconscionable. Nor can they. Indeed, there are no elements of surprise or oppression in the arbitration agreements, especially since the agreements consist of standalone two or three-page documents that are clearly labeled. Further, for Plaintiff Elisabeth Lopez, she signed the agreement not once, but twice. Plaintiffs cannot reasonably contend their respective agreements to arbitrate are procedurally unconscionable.

### 2. The Agreements Are Not Substantively Unconscionable Under *Armendariz*

An arbitration agreement will not be deemed unenforceable unless it is also substantively unconscionable. *McMannus,* 109 Cal.App.4th at 87. Substantive unconscionability focuses on the terms of an agreement and whether they produce "overly harsh" or "one-sided" results. *Armendariz,* 24 Cal.4th at 114. Under California law, employment arbitration agreements must provide: (1) a neutral arbitrator; (2) adequate discovery; (3) a written award; (4) all remedies otherwise available in court; and (5) not require the employee to pay unreasonable forum costs. *Id.* at 102.

As noted above, under *Concepcion*, courts may not invalidate arbitration agreements under state law applicable only to arbitration contracts. *Concepcion*, 131 S.Ct. at 1747. The *Armendariz* standard applies only to arbitration contracts. Thus, it should not apply in this case.[4] But even if *Armendariz* applies, Plaintiffs' agreements to arbitrate still satisfy all of these requirements.

#### a. The Arbitration Agreements Provide for a Neutral Arbitrator

Selecting a neutral arbitrator is the first element of an enforceable agreement to arbitrate employment claims. *Armendariz,* 24 Cal.4th at 103. Each Plaintiff's respective agreements to arbitrate allows the parties to rank their preference for the appointed arbitrators from a list of proposed arbitrators provided by the AAA. Leal Dec. at ¶¶ 5-7, Exs. A-D; Tell Dec. at ¶¶3-4, Exs. B & C. Further, the AAA Rules permit a neutral selection process by allowing the parties to strike and also rank neutrals from a proposed list. *Id.*; RJN Ex. B at p. 20. Thus, the arbitration agreements satisfy this element.

#### b. The Arbitration Agreements Provide For Adequate Discovery

Arbitration agreements provide for adequate discovery where the parties are entitled to discovery sufficient to adequately arbitrate their statutory claims, including access to essential documents and witnesses, *as determined by the arbitrator*. *See Armendariz*, 24 Cal.4th at 984 (emphasis added). The AAA Rules satisfy *Armendariz*'s discovery requirements. *Roman v. Superior Court*, 172 Cal.App.4th

---

[4] Several courts have called *Armendariz* into question in light of *AT&T Mobile LLC v. Concepcion*, 131 S. Ct. 1740 (2010). *See Beard v. Santander Consumer USA, Inc.*, 2012 U.S. Dist. LEXIS 53882 (E.D. Cal. 2012) ("courts have questioned *Armendariz*'s continuing viability after *Concepcion*"); *Oguejiofor v. Nissan*, No. C-11-0544 EMC, 2011 WL 3879482, at *3 (N.D. Cal. Sept. 2, 2011) (noting that *Armendariz* was abrogated in part by *Concepcion*); *accord Ruhe v. Masimo Corp.*, No. SACV 11-00734-CJC(JCGx), 2011 WL 4442790, at *2 (C.D. Cal. Sept. 16, 2011); *Burnett v. Macy's West Stores Inc.*, No. 1:11-cv-01277 LJO SMS, 2011 WL 4770614, at *4 n. 3 (E.D. Cal. Oct. 7, 2011).

1462, 1476 (2009). Here, each of the arbitration agreements at issue provide that "the parties shall have an opportunity to conduct discovery sufficient to present a meaningful prosecution or defense of the claims." Leal Dec. at ¶¶ 5-7, Exs. A-D; Tell Dec. at ¶¶3-4, Exs. B & C. In addition, the AAA Rules give the arbitrator wide discretion to order such discovery "as the arbitrator considers necessary to a full and fair exploration of the issues in dispute," including depositions and written discovery. RJN Ex. B, p. 19. These provisions plainly satisfy *Armendariz*'s discovery requirements.

####    c.    The Arbitration Agreements Require A Written Award

An enforceable arbitration agreement must also provide for a written award. *Armendariz*, 24 Cal.4th at 102. Here, each of the agreements require the arbitrator to issue a written award. Leal Dec. at ¶¶ 5-7, Exs. A-D; Tell Dec. at ¶¶3-4, Exs. B & C. Therefore, the agreements meet this element as well.

####    d.    The Arbitration Agreements Provide Adequate Remedies

For an arbitration agreement to be enforceable, it must allow all remedies that would otherwise be available in court. *Armendariz*, 24 Cal.4th at 102. The arbitration agreements also give the arbitrator the authority the power to issue remedies that are available in court under substantive law. Leal Dec. at ¶¶ 5-7, Exs. A-D; Tell Dec. at ¶¶3-4, Exs. B & C. Thus, the agreements also meet this requirement.

####    e.    The Arbitration Agreements Do Not Impose Unreasonable Costs

Under *Armendariz*, an arbitration agreement cannot generally require the employee to bear any type of expense that the employee would not be required to bear if they were free to bring the action in court. *Armendariz*, 24 Cal.4th at 111-12. Under each of the agreements at issue, "Randstad will pay the arbitrator's fees and the arbitration filing and administrative fees, and any other costs uniquely attributable to arbitration (including the filing fee)." Leal Dec. at ¶¶ 5-7, Exs. A-D; Tell Dec. at ¶¶3-4, Exs. B & C. As a result, the agreements satisfy this standard.

### D.    Plaintiffs Must Arbitrate Their Claims On An Individual Basis

In *Concepcion*, the Supreme Court held that class and collective action waivers are valid and enforceable under the FAA and that parties' agreements to arbitrate their claims solely on an individual basis must be enforced. *Id.* at 1748. Plaintiffs' respective arbitration agreements expressly prohibit them from litigating their claims in any class, collective, or representative proceeding. Leal Dec. at ¶¶ 5-7, Exs. A-D; Tell Dec. at ¶¶3-4, Exs. B & C. Thus, Plaintiffs have validly waived their rights to

participate in any class action, in both arbitration and in court. Therefore, Plaintiffs should be compelled to arbitrate their individual claims and the Court should dismiss their class claims.

### E. The NLRA Does Not Invalidate Class Action Waivers

In a divided ruling, the Ninth Circuit recently joined the minority of a circuit split on a highly litigated and controversial issue—whether class action waivers violate the NLRA. *Morris*, 834 F.3d 975 (9th Cir., 2016). The Second, Fifth, and Eighth Circuits have found class action waivers enforceable under the FAA, but the Seventh and Ninth Circuits have found them unenforceable. *Patterson v. Raymours Furniture Co., Inc.*, 659 F. App'x 40, 43 (2d Cir. 2016), as corrected (Sept. 7, 2016), as corrected (Sept. 14, 2016) (collecting cases). Randstad fully anticipates Plaintiffs will argue the class action waivers in their respective arbitration agreements are unenforceable under *Morris*. But the *Morris'* majority holding was wrongly decided. *Morris*, 834 F.3d at 990 (Ikuta. J., dissenting). The *Morris* decision ignores Supreme Court precedent, applies incorrect analysis, and results in an outcome directly in conflict with the purpose of the FAA.

In finding that class action waivers interfere with a substantive right protected by Sections 7 and 8 of the NLRA, the majority in *Morris* ignored Supreme Court precedent and applied the wrong mode of analysis. Supreme Court precedent requires that unless "the FAA's mandate has been overridden by a contrary congressional command," arbitration agreements should be enforced according to their terms. *CompuCredit Corp. v. Greenwood*, 132 S. Ct. 665, 669 (2012) (internal quotation marks and citations omitted). Instead of considering whether the NLRA contains a contrary congressional command, the *Morris* majority focused on whether the NLRA confers "substantive rights," and attempted to "equate a substantive right to concerted action with a legal procedural mechanism for resolving disputes." *Morris*, 834 F.3d at 992, 996 (Ikuta, J., dissenting).

The Supreme Court has consistently rejected claims to invalidate arbitration provisions where the text of the federal statute at issue does not expressly preclude the arbitration provision, and has similarly rejected claims that legislative history or policy of the federal statute precludes arbitration. *Morris*, 834 F.3d at 994 (Ikuta, dissent); *see also Moses H. Cone*, 460 U.S. at 24; *Green Tree Fin. Corp. v. Randolph*, 531 U.S. 79, 89–90 (2000). Rather, the Supreme Court has held that when Congress intends to prohibit arbitration clauses, it will do so expressly and with clarity. *CompuCredit*, 132 S.Ct. at 672.

Here, there is simply no language in Sections 7 and 8 of the NLRA that even remotely suggests a contrary congressional command overriding the FAA.[5]  *Morris*, 834 F.3d at 996-97 (Ikuta. J., dissenting).  Furthermore, neither the legislative history nor the NLRA itself suggests that Congress intended to preclude enforcement of class action waivers or intended to protect the "right to resolve disputes using a particular legal procedure." *Id.*

Absent a contrary congressional command, the NLRA does not render class action waivers unenforceable.  Accordingly, this Court should reject *Morris* and follow well-settled Supreme Court jurisprudence to find that the class action waivers in Plaintiffs' arbitration agreements are enforceable, and should compel Plaintiffs to arbitrate their individual claims only.

### F. The Court Should Stay Or Dismiss This Action In Its Entirety

If a court orders a case to arbitration, upon the request of a party, the Court must stay the civil action pending the completion of the arbitration.  9 U.S.C. § 3.  Since Plaintiffs must arbitrate their respective claims on an individual basis, the Court should grant Randstad's motion and stay this action pending the resolution of each Plaintiffs' arbitration.  In the alternative, the Court may dismiss the case, including the class claims, because the parties' arbitration agreements expressly prohibit class proceedings, including class arbitrations, and instead, require Plaintiffs to submit claims to individual arbitration.  *See Sparling v. Hoffman Constr. Co.*, 864 F.2d 635 (9th Cir. 1988) (affirming dismissal of plaintiff's claims where arbitration clause barred all claims).

### G. If This Court Believes The Supreme Court's Decision In *Morris* Would Affect The Outcome Of This Motion, The Proceedings Should Be Stayed Pending Review

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants.  How this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance." *Landis v. North American Co.*, 299 U.S. 248, 254–55 (1936); *see also Clinton v. Jones*, 520 U.S. 681, 706-07 (1997).  Waiting for an important decision bearing on

---

[5] Section 7 of the NLRA provides that, "[e]mployees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection." 29 U.S.C. § 157.  Section 8 makes it "an unfair labor practice for an employer ... to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in [§ 7]."  29 U.S.C. § 158(a).

the outcome of another proceeding, particularly the Supreme Court's decision, is a legitimate reason to stay a case, and this Court has done so in the past. *See Holloway v. Best Buy Co., Inc.*, No. C 05-5056 PJH, 2010 WL 816630, at *2 (N.D. Cal. 2010) (staying a certification ruling pending the Ninth Circuit's *en banc* ruling in *Wal-Mart v. Dukes*, 564 U.S. 388 (2010).); *see also Leyva v. Certified Grocers of Cal., Ltd.*, 593 F.2d 857, 863-64 (9th Cir. 1979) ("A trial court may, with propriety, find it is efficient for its own docket and the fairest courts for the parties to enter a stay of an action before it, pending resolution of independent proceedings which bear upon the case."); *Lindell v. Synthes, USA*, 2012 WL 1657197, at *3 (E.D. Cal. May 10, 2012) (same); *Filtrol Corp. v. Kelleher*, 467 F.2d 242, 244 (9th Cir. 1972) (same).

Indeed, it is common for district courts to stay proceedings pending the outcome of a petition for a writ of *certiorari* when there is a reasonable possibility that the Supreme Court could eliminate the need for such proceedings by granting review and reversing the order below. *See NGV Gaming, Ltd. v. Harrah's Operating Co.*, 2008 WL 4951587, at *1 (N.D. Cal. Nov. 18, 2008) (granting motion to stay district court proceedings pending decision on petition for writ of *certiorari*). The reason for such a stay is that it "would be extraordinary waste of time and money to conduct" discovery and motion practice, "only to have to do it all again because…the parties and the Court were proceeding under a legal framework" that the appellate court "determined did not apply." *Meijer, Inc. v. Abbott Labs.,* 2009 WL 723882 at *4 (N.D. Cal. Mar. 18, 2009).

To the extent Plaintiffs argue the *Morris* decision controls the outcome of this motion, this Court should stay this matter until the United States Supreme Court has issued its guidance. In resolving *Morris*, the Supreme Court will decide whether an agreement requiring an employer and an employee to resolve employment-related disputes through individual arbitration, and to waive collective and class proceedings, is enforceable under the FAA. That is precisely the issue in this case.

Failure to enter a stay risks unnecessarily burdening the Court and the parties with unnecessary efforts, such as extensive discovery, that may be mooted Supreme Court's decision. *See Kingdom of Sweden v. Melius,* 2015 WL 7574463, at *4 (C.D. Cal. Nov. 25, 2015) (granting motion to stay where party would be forced to expend resources in litigation absent a stay). The opening briefs in Morris were filed earlier this month on June 9, 2017 and the response briefs on the merits will be filed later this

DEFENDANT RANDSTAD US, L.P.'S MOTION TO COMPEL ARBITRATION / CASE NO. 5:17-CV-01003-BLF
39547269v.1

summer on August 9, 2017, with oral argument and a ruling expected to occur by early next year. RJN Ex. C, Docket in *Ernst & Young, LLP v. Morris,* Supreme Court Case No. 16-300 (filed September 8, 2016). If the Court were to rule on the present motion and proceed with the action without a stay, this Court may have to consider this issue twice and force the parties to expend unnecessary resources.

Waiting for the Supreme Court's decision and staying the proceeding will not prejudice Plaintiffs or the putative class. To the contrary, given that the Supreme Court's decision is expected early next year, allowing the parties to wait for a ruling will save the parties and the Court resources and effort. Accordingly, in the interest of judicial economy and to avoid wasted effort (and money) by the parties, Randstad respectfully requests that this Court stay all proceedings in this action, including ruling on this motion, until after the Supreme Court issues a decision.

## IV.  CONCLUSION

For the foregoing reasons, Randstad respectfully requests that the Court grant its motion. The Court should compel arbitration of Plaintiffs' claims on an individual basis and dismiss the class claims in accordance with the parties' agreements, or, in the alternative, stay the action pending arbitration. Should this Court believe the impending Supreme Court decision in *Morris* would affect the outcome of this motion, it should stay these proceedings, including ruling on the current motion, until the Supreme Court decides the Consolidated Appeals.

DATED: June 21, 2017

Respectfully submitted,

SEYFARTH SHAW LLP

By:  */s/ Andrew M. McNaught*
Andrew M. McNaught
Michael A. Wahlander
Alison H. Hong

Attorneys for Defendant
RANDSTAD US, L.P.